**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **LAURA L. STEWART,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 15 C 11600** |
| | ) | |
| **THE NORTHWESTERN MUTUAL LIFE** | ) | |
| **INSURANCE COMPANY and MICHAEL** | ) | |
| **BARTENHAGEN,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Laura L. Stewart, a Florida citizen, has sued The Northwestern Mutual Life

Insurance Company, a Wisconsin company with its principal place of business in that

state, and one of its sales agents, Illinois citizen Michael Bartenhagen. Stewart seeks

to recover the death benefit on her late husband's life insurance policy, of which she is

the beneficiary.

Stewart alleges that on September 10, 2012—five days after her husband's

death—she paid her husband's unpaid premiums in order to reinstate his lapsed policy,

but that Northwestern Mutual refused to reinstate the policy. She asserts state law

claims for breach of contract, promissory estoppel, and breach of fiduciary duty.

Stewart also seeks a declaratory judgment that pursuant to 215 ILCS 5/357.5,

Northwestern Mutual reinstated her husband's life insurance policy by accepting the

check she gave it to cover delinquent premiums. Defendants have moved to dismiss

under Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, the Court grants defendants' motion.

## Background

The following facts are taken from Stewart's complaint, which the Court must accept as true for the purposes of the present motion, and "documents that are central to the complaint and are referred to in it." *Williamson v. Curran*, 714 F.3d 432, 435–36 (7th Cir. 2013).

In June 2004, Northwestern Mutual issued Stewart's husband, David, a life insurance policy worth $500,000. The insurance contract listed Stewart's husband as the sole owner of the life insurance policy and listed Stewart as the policy's sole beneficiary. Under the terms of the contract, Stewart's husband was required to pay a first premium of $1,558 on June 11, 2004, and pay annual premiums of $1,420 every year by June 11 through 2024. Neither the complaint nor the documents referred to in it mention a payment plan for the premiums, but it appears that Stewart's husband arranged a payment plan through which he made monthly payments to cover his annual premiums. He made payments on a monthly basis through May 2012 but failed to pay his monthly installment of $123.55 due June 11, 2012. Northwestern Mutual sent an urgent letter to Stewart's husband informing him that he had missed a payment, he was entering a 31-day grace period, and his policy would lapse if he did not submit his missed premium payment with the next month's payment by July 11, 2012. When he again failed to make a payment, Northwestern Mutual terminated his life insurance policy.

Stewart's husband apparently never opened these letters. He also did not open

another letter notifying him that his policy had been terminated and that, pursuant to the

terms of his insurance contract, he could take action to reinstate his lapsed life

insurance policy.  The letter, addressed to Stewart's husband and dated August 16,

2012, stated in relevant part:

> Dear Policyowner:
>
> We have not yet received the past due premium for this policy and it no
> longer provides the protection you originally intended.
>
> The policy coverage has ended.
>
> **However, you can apply to restore full protection and policy
> values, provided the insured is living.  To do so, you must take
> this easy step:**
>
> - Enclose the reinstatement payment coupon with your
>   payment of $1,436.81 to reinstate this policy with premiums
>   paid to June 11, 2013.  Your payment must be received by
>   September 9, 2012. . . .
>
> If the payment is received by the due date, you will continue to enjoy all
> the valuable benefits the policy was designed to provide.  After
> reinstatement, your next payment will be due on June 11, 2013.
>
> If your payment is not received by September 9, 2012, the insured will be
> required to submit additional information, which may include a medical
> examination and records from a physician.  This information may result in
> additional premiums being charged or coverage being declined.

Defs.' Ex., dkt. no. 1-3, at 36.  Stewart also did not see these letters when they were

sent, because sometime prior to the first letter's delivery, she and her husband stopped

living together.

From January 2012 through September 2012, Stewart's husband suffered from

depression.  He visited a hospital in late May and was admitted for psychiatric care on

May 26, 2012.  He was released from the hospital on or around June 1, 2012, still

receiving medication and being treated by a doctor.  On September 5, 2012, he died.

Four days after her husband's death, Stewart found and read the unopened letters from Northwestern Mutual, including the letter telling her husband he had until September 9, 2012 to reinstate his life insurance policy. According to Stewart's complaint, she then received a telephone call from Northwestern Mutual on September 10, 2012 in which she was instructed to issue a check for her husband's past-due premium so that a Northwestern Mutual representative could come pick it up from her home. Specifically, Stewart alleges that "Michael Bartenhagen individually and as an agent of [Northwestern Mutual] promised that the insurance policy would be reinstated if Laura Stewart had a check ready for him to pick up at her home." Compl., dkt. no. 1-1, ¶ 47. Bartenhagen came to Stewart's home and retrieved the check that day, and sometime between September 10 and September 27, 2012, Northwestern Mutual negotiated the check.

On September 26, 2012, Northwestern Mutual telephoned Stewart to tell her that her claim for the benefit payable under her husband's insurance policy would not be honored. The next day, Northwestern Mutual issued a letter denying reinstatement of the policy and denying Stewart's claim. It also sent her a check worth $1,436.81, in an effort to refund the payment she made seventeen days prior.

Stewart filed suit in the Circuit Court of Cook County in November 2015, asserting four claims against defendants. First, she alleged that Northwestern Mutual breached her husband's insurance contract. (She brought this claim as an intended third-party beneficiary.) Second, she sought a declaratory judgment to the effect that under 215 ILCS 5/357.5, Northwestern Mutual reinstated her husband's life insurance policy by receiving her check, negotiating it, and holding onto the funds for seventeen

days.  Third, Stewart alleged that Bartenhagen and Northwestern Mutual should be liable for the total amount of the benefit payable under the insurance policy on a theory of promissory estoppel.  Fourth, she alleged that Bartenhagen breached a fiduciary duty he allegedly owed her as her husband's insurance agent.

Defendants removed the case to this Court on December 23, 2015 and then moved to dismiss the case.  The existence of complete diversity was unclear at the time, so the Court requested further submissions on that point.  The issue was resolved when Stewart confirmed that she is a Florida domiciliary and citizen, thereby establishing complete diversity.

## Discussion

When considering a motion to dismiss for failure to state a claim, the Court accepts the facts stated in the complaint as true and draws reasonable inferences in favor of the plaintiff.  *Parish v. City of Elkhart*, 614 F.3d 677, 679 (7th Cir. 2010).  The Court may properly consider documents submitted by a defendant seeking dismissal where those documents are referenced in the complaint, their authenticity is undisputed, and they are central to the plaintiff's claim.  *See Hecker v. Deere & Co.*, 556 F.3d 575, 582 (7th Cir. 2009).  To state a viable claim, a plaintiff must provide "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible on its face if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Defendants seek dismissal of all four of Stewart's claims.  They contend that by the express terms of the insurance policy, Stewart was not permitted to reinstate her

husband's insurance policy after his death. They further argue that 215 ILCS 5/357.5 does not dictate that Northwestern Mutual's receipt, holding, and eventual refund of Stewart's September 10, 2012, payment constitutes reinstatement of the insurance policy. Because the insurance policy was reinstated neither before nor after Stewart's husband's death, say defendants, denying Stewart's claim for the policy benefit did not constitute a breach of contract. Next, defendants contend that Stewart cannot bring a promissory estoppel claim to enforce her husband's written insurance contract, and that she has failed to state a promissory estoppel claim because she has not plausibly alleged reasonable and detrimental reliance on Bartenhagen's alleged promises. Finally, defendants argue that Bartenhagen neither owed Stewart a fiduciary duty nor caused damages by his conduct.

**A. Breach of contract**

It goes without saying that an insurer does not breach an insurance contract when it refuses to fulfill a claim on a lapsed policy. The parties do not dispute that on the day Stewart's husband passed away, his life insurance policy had lapsed. Thus, Northwestern Mutual did not breach the insurance contract by refusing to pay the benefit to Stewart when she made a claim after that date, unless the life insurance policy was reinstated.

Stewart claims that this is precisely what happened, and therefore a valid contract existed at the time she made a claim for the benefit of her husband's policy. Specifically, Stewart contends that Northwestern Mutual, by its words and actions and those of its agent, Bartenhagen, reinstated the life insurance policy. She offers two arguments for why Northwestern Mutual's and Bartenhagen's actions should be

considered to have this effect.  First, Stewart argues that Northwestern Mutual waived its right under the contract to declare the policy lapsed.  Second, she argues that 225 ILCS 5/357.5 dictates that the acceptance of an overdue premium reinstates a lapsed life insurance policy, which she contends happened here.

"Waiver is an equitable principle invoked to further the interests of justice whenever a party initially relinquishes a known right or acts in such a manner as to warrant an inference of such relinquishment." *Lumbermen's Mut. Cas. Co. v. Sykes*, 384 Ill. App. 3d 207, 219, 890 N.E.2d 1086, 1097 (2008) (internal quotation marks omitted).  "A waiver may be either express or implied, arising from acts, words, conduct, or knowledge of the insurer." *Home Ins. Co. v. Cincinnati Ins. Co.*, 213 Ill. 2d 307, 326, 821 N.E.2d 269, 282 (2004).  Implied waiver occurs "when conduct of the person against whom waiver is asserted is inconsistent with any intention other than to waive it." *Id.*

Stewart argues that by the combination of two courses of conduct, Northwestern Mutual impliedly waived its right to declare her husband's policy lapsed.  First, she points to the words and actions of Bartenhagen, who allegedly told Stewart that the policy would be reinstated despite her husband's death if she issued and gave him a check for $1,436.81.  Second, she points to the fact that Northwestern Mutual took possession of the check and negotiated it and did not return the check but rather attempted to refund the money after seventeen days had passed.

A faulty understanding of agency principles grounds Stewart's argument that Bartenhagen's promises manifested Northwestern Mutual's knowing and voluntary relinquishment of its contractual rights.  Stewart contends that Northwestern Mutual

7

should be bound by words Bartenhagen spoke and actions he took on behalf of the

insurer because he was acting as an agent vested with apparent authority. She argues

that Bartenhagen conveyed the impression that he was vested with the power to bind

Northwestern Mutual. But apparent authority depends on the acts of the alleged

principal, not those of the alleged agent. *See State Sec. Ins. Co. v. Burgos*, 145 Ill. 2d

423, 432, 583 N.E.2d 547, 551 (1991) ("Apparent authority arises where a principal

creates, through words or conduct, the reasonable impression that the putative agent

has been granted authority to perform certain acts. Apparent authority is that authority

which a reasonably prudent person, in view of the principal's conduct, would naturally

suppose the agent to possess.") (internal citations omitted). Nowhere in the complaint

does Stewart allege words or conduct by Northwestern Mutual that would give the

impression that Bartenhagen had the authority to waive Northwestern Mutual's rights

under the insurance contract. On the contrary, Stewart's husband's insurance

application (which is memorialized in the insurance policy at the heart of this dispute)

states that "[n]o agent is authorized to make or alter contracts or to waive any of the

Company's rights or requirements." *See* Defs.' Ex., dkt. no. 1-3, at 23.

As for Northwestern Mutual's actions, implied waiver of the right to declare a

policy lapsed requires something more than the mere negotiation and disposition of a

check. In *Nieder v. Jackson National Life Insurance Co.*, No. 10 C 6766, 2011 WL

3798224 (N.D. Ill. Aug. 22, 2011), another judge in this district confronted a similar

claim. There, the beneficiary of a life insurance policy sent a check for an unpaid

premium after the time period for reinstatement had elapsed and the insured had died.

*Id.* at *1. The life insurance company received and negotiated the beneficiary's check,

and it did not issue a refund until approximately thirty-five days later. *Id.* Even though the life insurance company retained the beneficiary's payment for more than a month and sent the refund to an address it knew or should have known was incorrect, the court granted the defendant's motion to dismiss. It observed that Illinois courts have found implied waiver of the right to declare a policy lapsed only where the insurer not only negotiated the check, but also held it "for a considerable amount of time or the insurer 'manifested its intention to reinstate the policy.'" *Id.* at *5 (quoting *McMillon v. Old Republic Life Ins. Co.*, 33 Ill. App. 3d 658, 662, 342 N.E.2d 246, 248–49 (1975)). The court concluded that the requirements for implied waiver had not been satisfied.

Stewart has not alleged that Northwestern Mutual did anything more than receive, deposit, and refund the premium payment she submitted after the grace period had expired and her husband had already passed away. She has not alleged that Northwestern Mutual did anything beyond negotiating the check that indicated it would waive its right to declare the policy lapsed. In fact, Stewart has filed suit to recover on a contract that expressly refutes any such contention: it states that a delinquent premium sent after the 31-day grace period requires "evidence of insurability . . . that is satisfactory to the Company." Defs.' Ex., dkt. no. 1-3, at 11. In the letter informing her husband that reinstatement would require a full premium payment plus interest, Northwestern Mutual also stated that reinstatement would occur only if "the insured is living" and that "[i]f your payment is not received by September 9, 2012, the insured will be required to submit additional information, which may include a medical examination and records from a physician. This information may result in additional premiums being charged or coverage being declined." *Id.* at 36. Stewart alleges that she submitted the

payment on September 10, 2012, after her husband was already deceased. She has

not alleged that she provided evidence of insurability to the company; indeed, she could

not have done so, for deceased persons are not insurable. And she has alleged

nothing suggesting that Northwestern Mutual did or said anything to suggest that it was

willing to set aside the requirement of evidence of insurability.

Stewart's other argument is that under a provision of the Illinois Insurance Code,

Northwestern Mutual reinstated her husband's policy by accepting her premium

payment. The provision she cites states, in relevant part:

> If any renewal premium be not paid within the time granted the insured for
> payment, a subsequent acceptance of premium by the company or by any
> agent duly authorized by the company to accept such premium, without
> requiring in connection therewith an application for reinstatement, shall
> reinstate the policy; provided, however, that if the company or such agent
> requires an application for reinstatement and issues a conditional receipt
> for the premium tendered, the policy will be reinstated upon approval of
> such application by the company or, lacking such approval, upon the 45th
> day following the date of such conditional receipt unless the company has
> previously notified the insured in writing of its disapproval of such
> application. The reinstated policy shall cover only loss resulting from such
> accidental injury as may be sustained after the date of reinstatement and
> loss due to such sickness as may begin more than 10 days after such
> date.

215 ILCS 5/357.5. Defendants contend that this reinstatement provision is inapplicable

to life insurance policies. They also argue that even if this provision applies, it does not

require an insurer to pay benefits for losses sustained prior to reinstatement.

The Illinois Supreme Court has not interpreted section 357.5 of the Illinois

Insurance Code to determine whether life insurance policies are subject to its dictates.

"[T]he task of the federal court sitting in diversity is to ascertain the substantive content

of state law as it either has been determined by the highest court of the state or as it

would be by that court if the present case were before it now." *Allstate Ins. Co. v.*

*Menards, Inc.*, 285 F.3d 630, 637 (7th Cir. 2002). In doing so, the Court "give[s] great weight to the holdings of the state's intermediate appellate courts and ought to deviate from those holdings only when there are persuasive indications that the highest court of the state would decide the case differently from the decision of the intermediate appellate court." *Id.*

The Illinois Insurance Code is written in such a way as to support defendants' contention that section 357.5 does not apply to life insurance policies. Article I of the Insurance Code designates classes of insurance in section 4:

Class 1. Life, Accident and Health

(a) Life. Insurance on the lives of persons and every insurance appertaining thereto or connected therewith and granting, purchasing or disposing of annuities. . . .

(b) Accident and health. Insurance against bodily injury, disablement or death by accident and against disablement resulting from sickness or old age and every insurance appertaining thereto, including stop-loss insurance.

215 ILCS 5/4. Article XX of the Code, the article in which section 357.5 appears, is dedicated to "Accident and Health Insurance." *Id.* § 352. The scope of Article XX is provided in section 352, which states that aside from exceptions not relevant here, "this Article shall apply to all companies transacting in this State the kinds of business enumerated in clause (b) of Class 1 and clause (a) of Class 2 of section 4. Nothing in this Article shall apply to, or in any way affect policies or contracts described in clause (a) of Class 1 of Section 4"—in other words, life insurance policies. *Id.* Although one intermediate Illinois court has held section 357.5 applicable to a life insurance policy "as a matter of law pursuant to section 357.1," *Eakins v. New England Mut. Life Ins. Co.*, 130 Ill. App. 3d 65, 75, 473 N.E.2d 439, 443 (1984), nothing in section 357.1 supports

11

this conclusion.  Section 357.1 does not reference life insurance, and it gives no indication that any provision within Article XX should be read to apply to life insurance despite section 352's express instruction to the contrary.  In light of the dearth of case law in accord with *Eakins* and the contradictory plain text of the Illinois Insurance Code, the Court thinks it highly likely that the Illinois Supreme Court would hold that section 357.5 does not apply to life insurance policies.  *See 1010 Lake Shore Ass'n v. Deutsche Bank Nat'l Trust Co.*, 2015 IL 118372 ¶ 21, 43 N.E.3d 1005, 1010 (2015) ("The fundamental objective of statutory construction is to ascertain and give effect to the intent of the legislature.  The most reliable indicator of legislative intent is the statutory language, given its plain and ordinary meaning.") (internal citations omitted).

Even if the statute applies to life insurance policies, Northwestern Mutual's alleged conduct does not constitute reinstatement under the statute.  This is because, as Illinois courts have observed, the same logic explaining why such behavior is insufficient to constitute equitable waiver also explains why such behavior is not "acceptance" of a late premium payment under the statute.  *See McMillon*, 33 Ill. App. 3d at 661–62, 342 N.E.2d at 248–49 ("[W]e hold that for there to be acceptance within the meaning of [section 357.5], there must be more than receipt and automatic negotiation by the insurer of a late premium payment.").  Northwestern Mutual received, deposited, and within seventeen days, refunded Stewart's payment; it took no other action that reflects an intent to reinstate her policy, and it expressly disclaimed such intent in the policy itself and the letter informing Stewart's husband how to reinstate his policy.  Thus even were the Court to conclude that section 357.5 applies to life insurance, the facts as alleged by Stewart do not give rise to the plausible inference that

Northwestern Mutual "accepted" her payment as the statute would require. She has therefore failed to adequately allege that the policy was reinstated and subsequently breached.

Accordingly, the Court dismisses Stewart's breach of contract claim (count 1) and her declaratory judgment claim (count 2).

**B.    Promissory estoppel**

Count 3 of Stewart's complaint alleges that Bartenhagen, individually and as Northwestern Mutual's agent, "promised that the insurance policy would be reinstated if Laura Stewart had a check ready for him to pick up at her home." Compl., dkt. no. 1-1, ¶ 47. Stewart alleges that "Bartenhagen expected [her] to issue such check to reinstate the policy," *id.* ¶ 48, and that in reliance on Bartenhagen's promise, she issued a check to Northwestern Mutual and gave it to Bartenhagen. *Id.* ¶ 49. "Injustice can only be avoided," she says, "by reinstating the policy and disbursing the death benefit under the policy." *Id.* ¶ 50.

To establish a claim of promissory estoppel in Illinois, "the plaintiff must prove that (1) defendant made an unambiguous promise to plaintiff, (2) plaintiff relied on such promise, (3) plaintiff's reliance was expected and foreseeable by defendants, and (4) plaintiff relied on the promise to its detriment." *Newton Tractor Sales, Inc. v. Kubota Tractor Corp.*, 233 Ill. 2d 46, 51, 906 N.E.2d 520, 524 (2009). Because promissory estoppel provides a remedy for a plaintiff in the absence of a contract, "a party will generally be barred from seeking redress under the doctrine of promissory estoppel 'where the performance which is said to satisfy the requirement of detrimental reliance is the same performance which supplies the consideration for [a] contract.'" *Janda v.*

*U.S. Cellular Corp.*, 2011 IL App (1st) 103552 ¶ 88, 961 N.E.2d 425, 444 (2011) (quoting *Prentice v. UDC Advisory Servs., Inc.*, 271 Ill. App. 3d 505, 512, 648 N.E.2d 146, 151 (1995)). "This is because promissory estoppel provides a means to enforce promises unsupported by consideration; it is not intended to give a party to a negotiated commercial bargain a second bite at the apple in the event it fails to prove breach of contract." *Saletech, LLC v. E. Balt, Inc.*, 2014 IL App (1st) 132639 ¶ 33, 20 N.E.3d 796, 807 (2014) (internal citations and quotation marks omitted).

Defendants contend that the terms of the insurance contract control, so Stewart cannot maintain a promissory estoppel claim. Stewart argues, however, that because the policy had lapsed at the time Bartenhagen made the promises that induced her to pay the outstanding premium, no enforceable contract existed. She also argues that even if the contract existed, she was not a party to the negotiated commercial bargain between her husband and Northwestern Mutual.

Neither of Stewart's arguments has merit. First, the Court rejects (and Stewart offers no support for) the counterintuitive contention that the lapse of an insurance policy renders the insurance contract void ab initio. Second, it is impossible to reconcile Stewart's assertion that she may enforce the insurance contract as an intended third-party beneficiary with her argument that she may bring a promissory estoppel claim as a non-party to the insurance contract. Stewart does not allege in her complaint that Bartenhagen promised that if she paid Northwestern Mutual $1,436.81, Northwestern Mutual would pay her $500,000. Rather, she alleges that Bartenhagen promised Northwestern Mutual would reinstate her husband's insurance policy *as set forth in the written insurance contract*. In other words, Stewart has not alleged that promissory

14

estoppel requires payment of funds Bartenhagen promised her; rather, she has alleged that she should receive the benefit of the bargain struck between her husband and Northwestern Mutual in the written insurance contract. The doctrine of promissory estoppel does not provide such an end-around. *See Saletech*, 2014 IL App (1st) 132639 ¶ 33, 20 N.E.3d at 807. The Court therefore dismisses Count 3.

## C. Breach of fiduciary duty

Finally, Stewart alleges that Bartenhagen breached a fiduciary duty he owed her as her husband's insurance agent. She claims that because he was "the Financial Representative of David Stewart's policy," Bartenhagen "owed a fiduciary duty to [Laura Stewart] to act at all times with the utmost care, honesty, and undivided loyalty in all his business dealings with [her]." Compl., dkt. no. 1-1, ¶¶ 52, 53. She contends that Bartenhagen committed two breaches of his alleged fiduciary duty. First, she claims that he "breached his fiduciary duty to [Stewart] by his acts described herein, including but not limited to those acts that were designed to encourage [her] to issue the check." *Id.* ¶ 54. Second, she alleges that Bartenhagen "breached his fiduciary duty when he became aware or should have been aware of the lapse in the insured's Policy and failed to properly notify [Stewart] within a reasonable time of the insured's Policy lapsing." *Id.* ¶ 55.

In Illinois, a plaintiff claiming breach of fiduciary duty must allege "(1) that a fiduciary duty existed; (2) that the fiduciary duty was breached; and (3) that the breach proximately caused damages." *Garrick v. Mesirow Fin. Holdings, Inc.*, 2013 IL App (1st) 122228 ¶ 31, 994 N.E.2d 986, 991 (2013). "The relationship between an insured and his broker or producer, acting as the insured's agent, is a fiduciary one." *Id.* ¶ 31, 994

N.E.2d at 990. "[A]n insurance broker is an agent of the insured and is required to exercise reasonable skill and diligence in the transaction of business entrusted to him, and will be responsible to his principal for any loss resulting from his failure to do so." *Id.* ¶ 35, 994 N.E.2d at 991.

Although Illinois law imposes fiduciary duties on insurance brokers and producers acting as agents of the insured, it does not impose such duties on insurance agents acting solely on behalf of the insurer. *See Bovan v. Am. Family Life Ins. Co.*, 386 Ill. App. 3d 933, 939–40, 897 N.E.2d 288, 293–94 (2008). "Whereas the insured's agent or broker has a duty of care, competence, and skill in performing all aspects of the insurance transaction, no such duty is imposed upon the insurer's agent regarding its duties toward a customer of the insurer." *Bellmer v. Charter Sec. Life Ins. Co.*, 105 Ill. App. 3d 234, 239, 433 N.E.2d 1362, 1366 (1982).

Stewart has failed to allege the basis for a fiduciary duty owed to her by Bartenhagen at the time that he failed to inform her of her husband's lapsed coverage. "[A]n insurance agent working for the insurer has no duty of care toward a customer, as long as there is no agency relationship between the agent and the customer." *Bovan*, 386 Ill. App. 3d at 939, 897 N.E.2d at 293. Stewart has alleged that Bartenhagen was "authorized to act as an agent of Northwestern Mutual." Compl., dkt. no. 1-1, ¶ 4. She has also alleged that Bartenhagen "was the Financial Representative of David Stewart's policy." *Id.* ¶ 52.

Nowhere in the complaint has Stewart alleged that Bartenhagen was her husband's agent, much less her own, at the time her husband's policy lapsed. Nor could she (at least so far as the Court can determine), as she makes clear throughout

the complaint that Bartenhagen acted at all times either individually or as Northwestern Mutual's agent. Moreover, no Illinois authority supports the notion that an insurance agent who sells a life insurance policy owes a fiduciary duty to a beneficiary who is not a policyowner. There are no facts alleged in the complaint that would give rise to a fiduciary relationship between Stewart and Bartenhagen that would have required him to inform her that her husband's premiums were going unpaid or that his policy was about to lapse.

This settles the matter of whether Bartenhagen had a duty to notify Stewart that her husband had allowed his policy to lapse. But it does not answer the question whether the promises Bartenhagen allegedly made to Stewart after her husband's death might have created a fiduciary relationship, by analogy to the principle that "[i]f an insurance agent acts so as to induce detrimental reliance by the proposed insured, the agent thereby undertakes an individual duty not to betray that reliance by his subsequent acts." *Bovan*, 386 Ill. App. 3d at 940, 897 N.E.2d at 294. Stewart alleges that Bartenhagen, acting as Northwestern Mutual's employee or agent, "took possession of Plaintiff's check and delivered the same to Defendant in its Milwaukee headquarters." Compl., dkt. no. 1-1, ¶ 21. She also alleges that Bartenhagen "individually and as an agent of [Northwestern Mutual]" promised that Northwestern Mutual would reinstate the policy if Stewart delivered the check. *Id.* ¶ 47.

Even if Bartenhagen created a fiduciary relationship with Stewart by these words and actions, Stewart has failed to state a claim for breach of fiduciary duty relating to his verbal promise to secure reinstatement of the policy. Stewart has not alleged that Bartenhagen failed to act with due diligence, nor has she alleged that any such lack of

17

due care caused the harm she claims to have suffered. Bartenhagen allegedly promised Stewart that by delivering a check to Northwestern Mutual, her husband's policy would be reinstated and she would be able to submit a claim for the policy's benefit. But Northwestern Mutual denied her claim and refused to reinstate the policy, not because Bartenhagen failed to exercise due care or did not act diligently in Stewart's interest, but because Stewart's husband was uninsurable at the time Stewart attempted to reinstate his policy. Stewart does not allege otherwise in her complaint, so her breach of fiduciary duty claim must be dismissed.

### Conclusion

For the foregoing reasons, the Court grants defendants' motion to dismiss [dkt. no. 5]. Stewart was unable to recover the benefit payable under her husband's policy because the policy was lapsed at the time he died; no revised complaint could plausibly allege otherwise. Because it is clear that the defects in Stewart's claims are legal defects that cannot be avoided by repleading, *see Bogie v. Rosenberg*, 705 F.3d 603, 608 (7th Cir. 2013) ("Leave to amend need not be granted . . . if it is clear that any amendment would be futile."), the Court directs the Clerk to enter judgment in favor of defendants.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: April 18, 2016